## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES and SUSAN GEROW,** | ) | **Case No. 3:17-cv-203** |
| | ) | |
| **Plaintiffs,** | ) | **JUDGE KIM R. GIBSON** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **STATE AUTO PROPERTY & CASUALTY** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

### I.  Introduction

Pending before the Court is the Motion for Summary Judgment (ECF No. 24) filed by State

Auto Property and Casualty Insurance Company ("Defendant")[1] and James and Susan Gerow's

("Plaintiffs") Cross Motion for Partial Summary Judgment (ECF No. 33). This Motion has been

fully briefed (*see* ECF Nos. 24, 25, 26,30, 31, 32, 33, 34, 35, 36, 39, 41, 42) and is ripe for disposition.

In this breach of contract action, Plaintiffs are suing Defendant, their insurer, for

Defendant's failure to pay a property damage claim that arose when Plaintiffs were no longer

living full-time at the insured property.  Defendant argues that it properly denied coverage for

Plaintiffs' claim under the insurance policy's residence premises condition, which conditions

coverage on Plaintiffs residing at the insured property.  Plaintiffs disagree that the policy contains

---

[1] In this Memorandum Opinion, the Court has spelled Defendant's name in accordance with the spelling used by Defendant in all of the summary-judgment-related filings in this case. (*See* ECF Nos. 24, 25, 26, 35, 36, 41, 42.) However, the Court has not altered the spelling of the Defendant's name in the caption from that used by Plaintiffs in their Complaint. (*See* ECF No. 1.) It appears to be appropriate for the parties to address this issue through a motion to correct caption.

such a condition and also contest Defendant's conclusion that Plaintiffs did not reside at the insured property.

The resolution of the pending Motions thus involves three major issues, which are discussed more fully below: (1) whether the Policy conditions coverage on Plaintiffs residing at the insured property; (2) whether Plaintiffs did reside at the insured property at the time their claim arose; and (3) whether Defendant waived or is estopped from asserting the residence premises condition as a defense.

For the reasons that follow, Defendant's Motion for Summary Judgment (ECF No. 24) is **GRANTED** and Plaintiffs' Cross Motion for Partial Summary Judgment (ECF No. 33) is **DENIED.**

## II. Jurisdiction and Venue

The Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiffs are citizens of different states than Defendant and the amount in controversy exceeds \$75,000. (*See* ECF No. 1 ¶¶ 8-17; ECF No. 1-3 ¶¶ 1-2, 5.)

Because this case was originally filed in the Court of Common Pleas of Cambria County, Pennsylvania, venue is proper in the Western District of Pennsylvania pursuant to 28 U.S.C. § 1441(a). *See Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 666 (1953) (explaining that the proper venue of a removed action is "the district court of the United States for the district and division embracing the place where such [removed] action is pending").

## III. Procedural History

On October 3, 2017, Plaintiffs initiated this lawsuit by filing their Complaint in the Court of Common Pleas of Cambria County, Pennsylvania, claiming breach of contract and statutory bad faith. (ECF No. 1-3.) Defendant timely removed to this Court on October 31, 2017. (ECF No.

-2-

1.) Defendant then filed its Answer to the Complaint on November 22, 2017 (ECF No. 6) and an Amended Answer on December 4, 2017. (ECF No. 8.)

On June 13, 2018, Defendant filed a Motion for Summary Judgment (ECF No. 24), accompanied by a Brief in Support (ECF No. 25) and a Concise Statement of Materials Facts (ECF No. 26). On July 13, 2018, Plaintiffs filed an Answer to Defendant's Motion for Summary Judgment (ECF No. 30), a Response to Defendant's Concise Statement of Material Facts And Plaintiffs' Counter Concise Statement of Material Facts (ECF No. 31), and a Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (ECF No. 32).[2] Defendant replied on July 27, 2018 (ECF Nos. 35, 36). Plaintiffs subsequently filed a Reply Brief in response to Defendant's Reply Brief. (ECF Nos. 37, 38, 39.)

On July 13, 2018,[3] Plaintiffs filed a Cross Motion for Partial Summary Judgment (ECF No. 33) and a Memorandum in Support of Plaintiffs' Cross Motion for Partial Summary Judgment (ECF No. 34).[4] Defendant filed its Response and Brief in Opposition on August 10, 2018 (ECF No. 41, 42).

---

[2] The Court reminds Plaintiffs' counsel to review the Practices and Procedures of Judge Kim R. Gibson, particularly those rules that deal with page limits for briefs. *See* Practices and Procedures of Judge Kim R. Gibson, Section II.B (Aug. 23, 2017).

[3] Defendant points out (ECF No. 42 at 1) that Plaintiffs' Cross Motion for Partial Summary Judgment was untimely, as it was filed almost a month late based on the deadlines of which the Court approved in its Initial Scheduling Order (ECF No. 17) and its Order Granting Motion to Extend Time (ECF Nos. 21-22). The Court recognizes that it could thus deny Plaintiffs' Cross Motion for failure to file in a timely manner. However, in order to rule on Defendant's Motion for Summary Judgment, the Court must necessarily address the issues raised in Plaintiffs' Cross Motion. The Court thus chooses to deny the Cross Motion on the merits as opposed to based on its untimeliness.

[4] The Court notes that Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (ECF No. 32) and Plaintiffs' Memorandum in Support of Plaintiffs' Cross Motion for Partial Summary Judgment (ECF No. 34) are exactly the same. Therefore, the Court will refer to both of these documents as "Plaintiffs' Memoranda." By citing to one of Plaintiffs' Memoranda, the Court also incorporates the same page of the other Memorandum.

The Court has fully reviewed and considered all of the filings pertaining to Defendant's

Motion for Summary Judgment and Plaintiffs' Cross Motion for Partial Summary Judgment.

Accordingly, these Motions are now ripe for disposition.

## IV. Factual History

The following facts are undisputed unless otherwise noted.[5] The Court includes

additional material facts in Part VI as necessary.

### A. The "Move" From Johnstown to Connecticut

In 2007, Mr. Gerow relocated with his wife and children to Johnstown, Pennsylvania for

an employment opportunity. (ECF No. 31 ¶ 15; ECF No. 36 ¶ 15.) In Johnstown, Plaintiffs lived

at 769 Viewmont Street ("Subject Property") (ECF No. 26 ¶ 1; ECF No. 31 ¶ 1), which was insured

by Defendant (ECF No. 26 ¶ 2; ECF No. 31 ¶ 2).

After Mrs. Gerow's father died on June 15, 2015, Plaintiffs decided that Mrs. Gerow would

take care of her mother, Carol Zaccara, in Connecticut. (ECF No. 31 ¶ 22; ECF No. 36 ¶ 22.) When

they made this decision, Plaintiffs did not know how long they would be staying in Connecticut

and whether their stay would be temporary or permanent. (ECF No. 31 ¶ 23; ECF No. 36 ¶ 23.)

In late August 2015, Mrs. Gerow and Plaintiffs' two youngest children moved[6] from the

Subject Property and went to live at Mrs. Zaccara's home (the "Connecticut Property"). (ECF No.

---

[5] The Court derives these facts from a combination of Defendant's Concise Statement of Material Facts (ECF No. 26), Defendant's Appendix of Exhibits thereto (ECF No. 24), Plaintiffs' Response to Defendant's Concise Statement of Material Facts and Plaintiffs' Counter Concise Statement of Material Facts (ECF No. 31), Plaintiffs' Appendix of Exhibits thereto (ECF No. 30), and Defendant's Responsive Concise Statement of Material Facts (ECF No. 36).

[6] Plaintiffs dispute Defendant's use of the verb "move." (ECF No. 31 ¶ 5.) However, Plaintiffs recognize that they changed their living situation such that Mrs. Gerow went to live with her mother in Connecticut. (*Id.*) Plaintiffs also recognize that Mr. Gerow testified at his Examination Under Oath that he moved his belongings from Johnstown to Connecticut, although Plaintiffs dispute the accuracy of his testimony at his

-4-

31 ¶ 32; ECF No. 36 ¶ 22; ECF No. 26 ¶ 5.) Mrs. Gerow told some neighbors that she was going to Connecticut to take care of her mother and that Mr. Gerow would be in and out. (ECF No. 31 ¶ 28; ECF No. 36 ¶ 28.) Plaintiffs moved many of their personal belongings to Connecticut.[7] (ECF No. 26 ¶ 6; ECF No. 31 ¶ 6.) Plaintiffs forwarded at least some of their mail to Connecticut.[8] (ECF No. 26 ¶ 7.) Plaintiffs' youngest child enrolled in school in Connecticut (ECF No. 26 ¶ 8; ECF No. 31 ¶ 24; ECF No. 36 ¶ 24), and to complete this enrollment, Mrs. Gerow obtained a Connecticut driver's license, although Mr. Gerow did not.[9] (ECF No. 31 ¶ 24; ECF No. 36 ¶ 24.)

Plaintiffs did not turn off the utilities at the Subject Property. (ECF No. 31 ¶ 36; ECF No. 36 ¶ 36.) They also never discussed renting or selling the Subject Property (ECF No. 31 ¶ 21; ECF No. 36 ¶ 21), and they have continued to file tax returns from the Subject Property and to bank in Johnstown. (ECF No. 31 ¶ 26; ECF No. 36 ¶ 26.)

---

Examination Under Oath because he was unrepresented by counsel and "use of the word 'moved' was initiated by State Auto's counsel." (*Id.*) For ease of expression, the Court will use the word "move" when referring to Plaintiffs' change in living situation.

[7] Defendant states that Plaintiffs moved all their personal belongings to Connecticut, except for an air mattress, television, and chair. (ECF No. 26 ¶ 6.) Plaintiffs counter that "the Gerows did not move all of their personal property to Connecticut" (ECF No. 31 ¶ 6), but Plaintiffs cite to Mr. Gerow's Examination Under Oath, in which Mr. Gerow says that a lot of the furniture was moved to Connecticut and that Plaintiffs have "moved so much" to Connecticut. (ECF No. 31-1 at 50.) The Court construes Plaintiffs' statement as an admission that Plaintiffs moved many, but not all, of their personal belongings to Connecticut, with which Defendant appears to agree (ECF No. 26 ¶ 6).

[8] Defendant claims all mail is forwarded to Connecticut. (ECF No. 26 ¶ 7; ECF No. 24-6 at 29.) Plaintiffs deny this statement (ECF No. 31 ¶ 7), while simultaneously citing to a place in the record in which Mr. Gerow stated that mail was forwarded to Connecticut and affirmed that no mail was coming to the Subject Property, although admitting that he still had a work-related P.O. box in Johnstown to which work-related mail comes. (ECF No. 31-1 at 69-70.) Similarly, Mrs. Gerow admitted that they changed their mailing address with the post office, such that mail sent to the Subject Property would be forwarded to the Connecticut Property. (ECF No. 31-2 at 12-13.)

[9] From 2007 to the present, Mr. Gerow has maintained a Pennsylvania driver's license. (ECF No. 31 ¶ 25; ECF No. 36 ¶ 25.) Mrs. Gerow now has a Pennsylvania driver's license. (ECF No. 31 ¶ 25; ECF No. 26 ¶ 25.)

Mr. Gerow works in the satellite industry and is a part owner of a company that performs government contracts; as a result, he spends a substantial amount of time commuting to Washington, D.C. and on occasion he stays overnight at a corporate apartment in Washington, D.C. (ECF No. 31 ¶ 17; ECF No. 36 ¶ 17.) He travels from his place of employment to Connecticut to spend time with his family (ECF No. 26 ¶ 9; ECF No. 31 ¶ 9), spending three to four days per week at the Connecticut Property (ECF No. 26 ¶ 10; ECF No. 31 ¶ 10; ECF No. 31 ¶ 18; ECF No. 36 ¶ 18), and the rest of his time at the apartment in Washington, D.C. and in Johnstown. (ECF No. 31 ¶ 18; ECF No. 36 ¶ 18.) Mr. Gerow estimated that he is at the Subject Property three to four times per month (ECF No. 31 ¶ 18; ECF No. 36 ¶ 18) and that he spends between 20 and 30 nights at the Washington, D.C. apartment per year (ECF No. 31 ¶ 19; ECF No. 36 ¶ 19). When Mr. Gerow stays at the Subject Property, he goes to the Sunnehanna Country Club, where he has been a member since 2009. (ECF No. 31 ¶ 35; ECF No. 36 ¶ 35.)

Between September 2015 and April 1, 2016, Mrs. Gerow visited the Subject Property approximately five to ten times.[10] (ECF No. 26 ¶ 11; ECF No. 31 ¶ 11.) None of Plaintiffs' children have been to the Subject Property since the family moved to Connecticut. (ECF No. 26 ¶ 12; ECF No. 24-5 at 12.)

## B. The August 2015 Loss

In August 2015, Plaintiffs reported a problem with the roof at the Subject Property (the "August 2015 Loss") to Defendant. (ECF No. 31 ¶ 29; ECF No. 31 ¶ 29.) Defendant sent its

---

[10] Defendant claims that Mrs. Gerow visited the Subject Property approximately ten times since the family moved to Connecticut, but Defendant cites to a portion of the record in which Mrs. Gerow states on April 1, 2016 that she has visited the Subject Property between five and ten times since September 2015. (ECF No. 24-5 at 12.)

employee, Allen Fisher, to the Subject Property to inspect the loss. (ECF No. 31 ¶ 30; ECF No. 36 ¶ 30.) Mr. Fisher drafted a claim report, which he emailed to Plaintiffs.[11] (ECF No. 31 ¶ 31; ECF No. 36 ¶ 31.) Neither Mr. Fisher nor any employee of Defendant advised Mr. Gerow that there was any issue with coverage, including any issue with the absence of personal property in the dwelling. (ECF No. 31 ¶ 32; ECF No. 36 ¶ 32.) Defendant also sent a letter and claim report to Plaintiffs with photos and a check after Mr. Fisher inspected the loss. (ECF No. 31 ¶¶ 33-34; ECF No. 36 ¶¶ 33-34.)

## C. The Subject Loss

On or about January 26, 2016, the Subject Property was damaged by a burst water pipe (the "Subject Loss"). (ECF No. 26 ¶ 1; ECF No. 31 ¶ 1.) At the time of the Subject Loss, the Subject Property was covered by a homeowners' insurance policy (the "Policy") issued by Defendant to Plaintiffs. (ECF No. 26 ¶ 2; ECF No. 31 ¶ 2.) The Policy indicates that the "Insured location" is the "residence premises," and defines "residence premises" as, in relevant part, "[t]he one family dwelling where you reside."[12] (ECF No. 24-3 at 12; ECF No. 31-1 at 7.)

Following the Subject Loss, Plaintiffs presented a claim under the Policy to Defendant for the damages suffered at the Subject Property. (ECF No. 26 ¶ 4; ECF No. 31 ¶ 4.) After

[11] The contents of this email are disputed. (ECF No. 31 ¶ 31; ECF No. 36 ¶ 31.) Mr. Gerow testified that the email said that the house was "vacant" (ECF No. 31-1 at 54), which Defendant disputes, without citing to the record (ECF No. 36 ¶ 31). The parties do not appear to have produced the email for the Court. However, in the claim report that Plaintiffs filed as Exhibit G, Mr. Fisher states that "[t]he house is empty, as the insured now lives near Washington, D.C. It is not vacant." (ECF No. 31-2 at 31.)

[12] The parties dispute the significance of this provision. Defendant claims the provision is a "condition that requires one or both Plaintiffs to reside at the Subject Property in order for coverage to apply." (ECF No. 26 ¶ 3.) Plaintiffs counter that the Policy "does not contain a 'condition' that requires one or both plaintiffs to reside at 769 Viewmont Avenue, Johnstown, Pennsylvania." (ECF No. 31 ¶ 3.) Instead, Plaintiffs explain that the "residence premises" provision is simply a definition that does "not constitute [a] policy condition[]." (Id.)

-7-

investigating the claim, Defendant denied the claim because Defendant determined that Plaintiffs did not reside at the Subject Property at the time of the Subject Loss.[13] (ECF No. 26 ¶ 13.) However, Defendant continued to accept Plaintiffs' premium payments until December 2016. (ECF No. 31 ¶ 45; ECF No. 36 ¶ 45.) Defendant's denial of coverage for the Subject Loss is at issue in the instant dispute.

## V. Legal Standard

"Summary judgment is appropriate only where . . . there is no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law." *Melrose, Inc. v. Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010) (quoting *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 380 n.6 (3d Cir. 2007)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). Issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). Material facts are those that will affect the outcome of the trial under governing law. *Anderson*, 477 U.S. at 248. The Court's role is "not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009). "In making this determination, 'a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.'" *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994)).

---

[13] Plaintiffs deny that this coverage decision was correct, but do not dispute that Defendant denied coverage and that the reason Defendant gave for denying coverage was that neither Plaintiff resided at the Subject Property. (ECF No. 31 ¶ 13; ECF No. 24-7 at 4.)

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the party opposing summary judgment "may not rest upon the mere allegations or denials" of the pleading, but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 n.11 (1986)). "For an issue to be genuine, the nonmovant needs to supply more than a scintilla of evidence in support of its position—there must be sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant." *Coolspring Stone Supply v. Am. States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir. 1993); *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (noting that a party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted).

## VI.    Discussion

Defendant argues that it is entitled to summary judgment based on two theories: (1) the Policy does not provide coverage for the Subject Loss because neither Plaintiff resided at the Subject Property at the time of the Subject Loss, and thus Plaintiffs' breach of contract claim fails as a matter of law; and (2) Defendant denied coverage based upon a reasonable interpretation of the Policy and applicable Pennsylvania law, and thus Defendant is entitled to summary judgment on Plaintiffs' bad faith claim. (*See generally* ECF No. 25.)

In Plaintiffs' Cross Motion for Partial Summary Judgment and Memoranda (ECF Nos. 32, 33, 34), Plaintiffs request that the Court enter judgment on the issue of whether Plaintiffs were

residents of the Subject Property at the time of the Subject Loss. (ECF No. 33 at 1.) Plaintiffs argue that the Subject Property was and is Plaintiffs' residence, and that even if it is not, Defendant waived and is estopped from asserting this argument. (ECF No. 32 at 6-18.) With regard to their bad faith claim, Plaintiffs claim that there is a genuine issue of material fact regarding whether Defendant acted in bad faith. (ECF No. 32 at 28.)

The Court will address each of these arguments in turn.

## A. Breach of Contract Claim

### 1. Residency at the Subject Property is a condition on coverage under the Policy.

Defendant argues that the Policy requires one or both of Plaintiffs to be residents of the Subject Property for their losses to be covered. (ECF No. 25 at 4.) Defendant calls this requirement an "express condition" on coverage. (*Id.*) Plaintiffs counter by arguing that the language of the Policy is ambiguous and that "[i]f Defendant made coverage contingent on the insured location being the primary or only residence of the Gerows . . . , then it was incumbent on Defendant to clearly state same [sic] in the policy." (ECF No. 32 at 11-12.) The Court agrees with Defendant that residency is a condition of the Policy, such that one or both Plaintiffs must reside at the Subject Property to receive the benefit of coverage.

Under Pennsylvania law,[14] "[t]he interpretation of an insurance contract regarding the existence or non-existence of coverage is 'generally performed by the court.'" *Minn. Fire & Cas. Co. v. Greenfield*, 855 A.2d 854, 861 (Pa. 2004). The court's goal when interpreting a policy is to

---

[14] Pennsylvania substantive law governs Plaintiffs' claims for breach of contract and bad faith. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state."); *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000) ("A federal court sitting in diversity must apply state substantive law and federal procedural law."). The parties do not dispute that Pennsylvania law applies.

"ascertain the intent of the parties as manifested by the terms used in the insurance policy."

*Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 290 (Pa. 2007). "Words of 'common usage'

in an insurance policy are to be construed in their natural, plain, and ordinary sense, and a court

may inform its understanding of these terms by considering their dictionary definitions." *Wall

Rose Mut. Ins. Co. v. Manross*, 939 A.2d 958, 962 (Pa. Super. Ct. 2007). "[C]ourts must construe the

terms of an insurance policy as written and may not modify the plain meaning of the words under

the guise of 'interpreting' the policy." *Id.; see Lucker Mfg., A Unit of Amclyde Engineered Prods., Inc.

v. Home Ins. Co.*, 23 F.3d 808, 814 (3d Cir. 1994).

When the policy's terms are ambiguous, the court construes the policy in favor of the

insured. *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 897

(Pa. 2006). A provision is ambiguous when "the language, viewed in the context of the entire

policy, is 'reasonably susceptible of different constructions and capable of being understood in

more than one sense.'" *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 363 (3d Cir. 2004) (quoting

*Med. Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir. 1999)). However, if the policy's terms are

clear and unambiguous, the court gives effect to that clear language. *Kvaerner Metals Div.*, 908

A.2d at 897.

The Court must therefore begin by considering the language of the Policy. The Policy's

Property Coverages Section covers "[t]he dwelling on the 'residence premises' shown in the

Declarations." (ECF No. 24-4 at 6.) The "residence premises" is defined as the "one family

dwelling where you[15] reside . . . and which is shown as the 'residence premises' in the

---

[15] In the Policy, "you" refers to the "named insured" shown in the Declarations and his or her spouse, if the spouse is a resident of the same household. (ECF No. 24-4 at 5.) The Declarations indicate that the "named insured" of the Policy includes both Plaintiffs. (*Id.* at 3.)

Declarations." (*Id.*) The Declarations then indicate that the Policy covers the premises located at 769 Viewmont Ave, Johnstown, PA 15905. (*Id.* at 3.) The Policy thus clearly makes coverage conditional on at least one of the insureds residing at the Subject Property, and numerous federal courts in the Pennsylvania have interpreted similar policy language in the same way. *See Campbell v. State Farm Fire & Cas. Co.*, 2:18-cv-00292, 2018 WL 3468214, at *1 (W.D. Pa. July 18, 2018) (dismissing a complaint against an insurer for breach of contract and bad faith when the insured did not reside at the covered property at the time of the loss); *Chen v. Allstate Ins. Co.*, Civil Action No. 11-2356, 2012 WL 460416, at *6 (E.D. Pa. Feb. 14, 2012) (finding that "the policy language is clear that [the p]laintiff's residency is a condition precedent to insurance coverage"); *Bell v. Allstate Ins. Co.*, No. Civ.A. 03-CV-4482, 2005 WL 1353527, at *3-4 (E.D. Pa. May 31, 2005) ("The definition of dwelling clearly and unambiguously requires that the property to be insured be owner occupied at the time of the loss."); *Certain Underwriters at Lloyd's London, Eng. v. Clark*, No. CIV. A. 97-6674, 1998 WL 404807, at *5-6 (E.D. Pa. July 16, 1998) (explaining that nearly identical language meant that the "[d]efendants by definition must reside at the residence premises; coverage was expressly conditional upon [the defendants] living in the house"); *see also Gardner v. State Farm Fire & Cas. Co.*, 544 F.3d 553, 560 (3d Cir. 2008) (denying coverage for an insured's claims because the insured was not residing at the insured property and the injury was thus excluded from coverage). Plaintiffs' contention that the Policy's language is ambiguous is thus contrary to the weight of the case law, and Plaintiffs have not cited to any relevant authority that

-12-

even begins to shift the balance towards ambiguity.[16] The Policy unambiguously requires at least one of Plaintiffs to reside at the Subject Property in order to receive coverage.

## 2. Plaintiffs did not reside at the Subject Property at the time of the Subject Loss.

Because the Policy clearly requires one or both of Plaintiffs to reside at the Subject Property at the time of the Subject Loss in order to receive coverage, the next issue is whether the residency requirement is met. The parties do not dispute that Mrs. Gerow is not a resident of the Subject Property. (*See* ECF No. 32 at 1 (arguing only that "Mr. Gerow Was/is A Resident Of The Johnstown Dwelling").) Nor could they reasonably do so, as it is undisputed that Mrs. Gerow lives full-time in Connecticut and has only been to the Subject Property five to ten times between September 2015 and April 1, 2016. (ECF No. 26 ¶ 11; ECF No. 31 ¶¶ 11, 22; ECF No. 36 ¶ 22.) The Court thus focuses on whether Mr. Gerow resides at the Subject Property.

"Pursuant to Pennsylvania law, construction of the term 'resident' in an insurance policy is a matter of law." *Mu'Min v. Allstate Prop. & Cas. Ins. Co.*, Civil Action No. 10-7006, 2011 WL 3664301, at *9 (E.D. Pa. Aug. 17, 2011). Pennsylvania courts have held that the word "resident" in an insurance policy, even if undefined, is unambiguous. *Wall Rose Mut. Ins. Co. v. Manross*, 939 A.2d 958, 964 (Pa. Super. Ct. 2007). "Residence" refers to "a factual place of abode evidenced by a person's physical presence in a particular place." *In re Residence Hearing Before the Bd. of Sch. Dirs., Cumberland Valley Sch. Dist.*, 744 A.2d 1272, 1275 (Pa. 2000) (citations and internal quotations omitted). The term "requires, 'at the minimum, some measure of permanency or habitual

---

[16] The Court also rejects Plaintiffs' arguments regarding the Policy's Estates Option Endorsement and vandalism provisions. (*See* ECF No. 32 at 6-9.) These provisions have no relevance to the issue at hand, as the question of whether the Policy conditions coverage on residency can clearly be resolved by reference to the plain language of the Property Coverages Section of the Policy and the cases cited *supra*.

-13-

repetition.'" *Wall Rose*, 939 A.2d at 965 (quoting *Erie Ins. Exch. v. Weryha*, 931 A.2d 739 (Pa. Super. Ct. 2007)). "Also, '[s]ince resident status is a question of physical fact,' intention is not a relevant consideration." *Id.* (citing *Amica Mut. Ins. Co. v. Donegal Mut. Ins. Co.*, 545 A.2d 343, 348 (Pa. Super. Ct. 1988)); *see also Campbell*, 2018 WL 3468214, at \*1 ("Plaintiff's reliance on her intention to return to the dwelling at a future date . . . does not establish 'residence.'").

When inquiring into residency, courts look at objective indicators "such as where an individual sleeps, takes her meals, receives mail, and stores personal possessions." *Allstate Ins. Co. v. Naskidashvili*, Civil Action No. 07-4282, 2009 WL 399793, at \*3 (E.D. Pa. Feb. 16, 2009); *see Chen*, 2012 WL 460416, at \* 6; *Mu'Min*, 2011 WL 3664301, at \*9. "[W]hen a person actually lives in one location, and sporadically visits, or keeps certain personal items at, another location, it is the location where he lives that is his residence," not the location he sporadically visits. *Gardner*, 544 F.3d at 560.

Based on the above case law and the unique facts of this case, it is clear that there is no genuine dispute of material fact that Mr. Gerow is not a resident of the Subject Property. In August 2015, Mrs. Gerow and Plaintiffs' two youngest children moved from Johnstown to Connecticut to take care of Mrs. Zaccara. (ECF No. 31 ¶ 32; ECF No. 36 ¶ 32; ECF No. 26 ¶ 5.) Mr. Gerow stays three to four days per week in Connecticut, where his wife and children reside. (ECF No. 24-6 at 4; ECF No. 26 ¶ 10; ECF No. 31 ¶¶ 10, 18; ECF No. 36 ¶ 18.) In contrast, he visits the Subject Property two to four times per month. (ECF No. 24-6 at 10, 17; ECF No. 31 ¶ 18; ECF No. 36 ¶ 18.) When he visits the Subject Property, he sometimes does not spend the night—he simply goes into the house to check on it and then continues on to Washington, D.C. or Connecticut. (ECF No. 24-6 at 10, 18.) Although Mr. Gerow clearly has ties to Johnstown and to

the Subject Property, as evidenced by his stops at the Subject Property and his visits to the local country club (ECF No. 24-6 at 18; ECF No. 31 ¶ 35; ECF No. 31-2 at 65; ECF No. 36 ¶ 35), as well as his Pennsylvania driver's license (ECF No. 24-6 at 4; ECF No. 31 ¶ 25; ECF No. 31-2 at 65; ECF No. 36 ¶ 25) and banking and voting activities in Johnstown (ECF No. 31 ¶ 26; ECF No. 31-2 at 65-66; ECF No. 36 ¶ 26), Mr. Gerow lacks the touchstone of residency—regular physical presence at the Subject Property. *See Gardner*, 544 F.3d at 560 (explaining that maintaining a close connection to the property at issue, such as keeping possessions there and having the intent to return to the property, did not create a genuine issue of fact regarding residency); *St. Paul Fire & Marine Ins. Co. v. Lewis*, 935 F.2d 1428, 1433 (3d Cir. 1991) (finding that storing personal possessions at a property and using the property's address for certain purposes "does not replace personal contact" for determining residency). Sporadic visits, only some of which involve spending time at the Subject Property, are simply not enough to create a genuine issue of material fact regarding residency. *See Gardner*, 544 F.3d at 560 ("[W]hen a person actually lives in one location, and sporadically visits, or keeps certain personal items at, another location, it is the location where he lives that is his residence."); *Chen*, 2012 WL 460416, at * 6 ("His statements of weekly visits admit the absence of 'permanency or habitual repetition' required for residency."); *Mu'Min*, 2011 WL 3664301, at *12 (finding that sporadically sleeping at the property at issue one or two nights per week did not establish residency); *Erie Ins. Exchange*, 931 A.2d at 744 (explaining that "sporadic visits and overnight stays" were not enough to show physical presence).

Furthermore, although there are some minor disputes about the personal property left at the Subject Property and why the Subject Property was moved from Johnstown,[17] there is no dispute that Plaintiffs moved much of their furniture and personal property to Connecticut. (ECF No. 24-5 at 14; ECF No. 24-6 at 10, 12-13, 33.) The property that was left at the Subject Property was left there for Mr. Gerow's convenience (ECF No. 24-5 at 14; ECF No. 24-6 at 12), and does not establish that Mr. Gerow resided at the Subject Property. *See Wall Rose*, 939 A.2d at 968.

Finally, Plaintiffs rely heavily on their intent to ultimately return to the Subject Property to live (ECF No. 24-6 at 19, 28; ECF No. 31 ¶ 36; ECF No. 32 at 2), and the Court does not doubt the sincerity of this intention. However, intention is not relevant to the issue of residency. *Wall Rose*, 939 A.2d at 965. Plaintiffs' assertion that they have never discussed selling or renting the Subject Property (ECF No. 24-5 at 19) is simply evidence of their intent to reside at the Subject Property again in the future and is therefore irrelevant. Furthermore, the fact that Mr. Gerow lists the Subject Property as his current address (ECF No. 24-6 at 3) and identifies the Subject Property as his "home" (ECF No. 24-6 at 13) does not affect the Court's inquiry, based on the lack of physical presence discussed above. *See Wall Rose*, 939 A.2d at 969 ("A.J.'s statement that he guessed that Grandma Manross' would be where he would call home in June 2004, in itself is not sufficient to establish residency.").

In conclusion, viewing the facts in the light most favorable to Plaintiffs and drawing all inferences in Plaintiffs' favor, there is no genuine dispute of material fact that Mr. Gerow did not reside at the Subject Property at the time of the Subject Loss.

---

[17] *See supra* note 7.

### 3. Defendant did not waive the residence premises condition.

Plaintiffs next argue that even if Plaintiffs violated the Policy's residence premises condition, Defendant waived the condition such that Defendant cannot use the violation of the condition as a basis for denying coverage. (ECF No. 31 at 18.) Plaintiffs argue that this waiver occurred when Mr. Fisher noted in his claim report for the August 2015 Loss that the house was empty and that Mr. Gerow lived in Washington, D.C. (*Id.* at 3.) Plaintiffs explain that Defendant paid Plaintiffs for the August 2015 Loss, and "[a]t no time did [Defendant] advise [Plaintiffs] that if they did not use the [Subject Property] as their primary, exclusive or sole residence then in the event of loss there would be no coverage." (*Id.*) By paying this prior claim when Defendant knew the residence premises condition was not met, Plaintiffs argue that Defendant waived the condition.

According to Defendant, Plaintiffs have not shown waiver because Mr. Fisher did not have express authority to waive the condition and any alleged waiver was not done in writing, as required by the Policy. (ECF No. 25 at 7-8.) Furthermore, Defendant asserts that the residence premises condition goes to the scope of the coverage provided by the Policy and therefore cannot be implicitly waived. (ECF No. 35 at 4.)

Under Pennsylvania law, "[w]aiver is the voluntary and intentional abandonment or relinquishment of a known right." *Prime Medica Assocs. v. Valley Forge Ins. Co.*, 970 A.2d 1149, 1156 (Pa. Super. Ct. 2009). Waiver may be express or implied. *Id.* at 1157. Waiver is implied "by a party's undisputed acts or language so inconsistent with a purpose to stand on the contract provisions as to leave no opportunity for a reasonable inference to the contrary." *Samuel J. Marranca Gen. Contracting Co., Inc. v. Amerimar Cherry Hill Assocs., Ltd. P'ship*, 610 A.2d 499, 501

-17-

(Pa. Super. Ct. 1992). "[C]onditions going to the coverage or scope of a policy of insurance, as distinguished from those furnishing a ground of forfeiture, may not be waived by implication from the conduct or action of the insurer." *Wasilko v. Home Mut. Cas. Co.*, 232 A.2d 60, 63 (Pa. Super. Ct. 1967); *Fed. Ins. Co. v. Continental Cas. Co.*, No. 2:05-cv-305, 2006 WL 3386625, at \*5 (W.D. Pa. Nov. 22, 2006). "The doctrine of implied waiver is not available to bring within the coverage of an insurance policy, risks that are expressly excluded therefrom." *Wasilko*, 232 A.2d at 63; *see also Pfeiffer v. Grocers Mut. Ins. Co.*, 379 A.2d 118, 121 (Pa. Super. Ct. 1977) ("[T]he doctrine of waiver does not operate to expand coverage under an insurance policy.").

Here, Plaintiffs do not appear to argue that Defendant expressly waived the residence premises condition, and they do not point to any express declaration by Defendant, either orally or in writing, that Defendant waived the condition. Instead, Plaintiffs argue that "[w]aiver can be implied and here, State Auto waived the right to cancel the policy in 2015 when it learned from its direct employee of an increase in hazard posed by alleged [sic] vacancy." (ECF No. 32 at 21.) The rest of Plaintiffs' briefing on the issue of waiver similarly revolves around Mr. Fisher's and Defendant's knowledge and failure to act based on that knowledge, which relate to implied waiver instead of express waiver. (*Id.* at 18-25.) Moreover, the Court has been unable to identify any express declaration of waiver after extensive review of the record. Therefore, Defendant did not expressly waive the residence premises condition.

Turning to the doctrine of implied waiver, Defendant could not have implicitly waived the residence premises condition, as it goes to the coverage of the Policy. *See Wasilko*, 232 A.2d at 63; *see also Certain Underwriters*, 1998 WL 404807, at \*6 ("Every clause in the contract relating to insured areas refers to the 'residence premises,' and the policy covers nothing but the residence

-18-

premises. [The d]efendants by definition must reside at the residence premises; coverage was expressly conditional upon [the defendants] living in the house."); *Chen*, 2012 WL 460416, at *6 (explaining that the plaintiff's residency is a condition on coverage). Courts outside Pennsylvania agree that residence premises conditions go to the policy's coverage and cannot be implicitly waived. *See Nancarrow v. Aetna Cas. & Sur. Co.*, 932 F.2d 742, 744 (8th Cir. 1991) ("[T]he renewal of the policy, even with the knowledge that [the plaintiff] no longer lived in the Beech Street house, could not extend coverage to risks not initially covered by its terms, that is, to an unoccupied dwelling."); *Mahens v. Allstate Ins. Co.*, No. 1:10-CV-174-TWT, 2011 WL 1321578, at *4 (N.D. Ga. Apr. 1, 2011) ("[T]he [d]efendant's assurances that it would pay for repairs, including its attempt to settle with integrity, did not waive the requirement that the insured reside in the insured dwelling."); *Hannah v. Nationwide Mut. Fire Ins. Co.*, 660 S.E.2d 600, 604 (N.C. Ct. App. 2008) (rejecting the application of the waiver doctrine to a residence premises condition, as the plaintiff was "seeking to use the doctrines of waiver and estoppel to obtain protection against risks not included within the policy"); *see also Shepard v. Keystone Ins. Co.*, 743 F. Supp. 429, 433 (D. Md. 1990) ("[The plaintiff's policy with the insurer] clearly limits coverage to the residence premises. To require [the insurer] to provide coverage for property not used as residence premises would constitute an extension of liability where none previously existed."). Accordingly, assuming that the other requirements of implied waiver are met, Defendant could not have implicitly waived the residence premises condition as a matter of law.

### 4. Defendant is not estopped from relying on the residence premises condition.

In addition to asserting that Defendant waived the residence premises condition, Plaintiffs claim that Defendant is estopped from relying on the condition as a basis for denying coverage.

Plaintiffs' argument is that Defendant knew after the August 2015 Loss that Plaintiffs no longer resided at the Subject Property. (ECF No. 32 at 23-24.) Rather than telling Plaintiffs that their residency status would affect their coverage under the Policy, Defendant remained silent about the residence premises condition and partially covered the loss. (*Id.* at 3, 23.) Relying on this silence and partial payment, Plaintiffs did not seek out a different insurance policy that would provide coverage for the Subject Property. (*Id.* at 24.)

Defendant responds by claiming that Plaintiffs cannot establish detrimental reliance on any of Defendant's conduct, because even when Defendant told Mr. Gerow that he might not be covered for the Subject Loss because the Subject Property may not be his residence premises, Mr. Gerow still "incorrectly believed that the Subject Property is his residence premises." (ECF No. 25 at 9.) Defendant concludes that "the August 2015 claim payment did not form [Mr. Gerow's] incorrect belief that the Subject Property is covered by the Policy." (*Id.* at 10.) Instead, "Mr. Gerow's conclusion that the Policy provided coverage for the Subject Property was based on his erroneous belief that the home remained his 'residence premises.'" (*Id.*)

In Pennsylvania, for the doctrine of estoppel to apply in the context of an insurance contract, "there must be such conduct on the part of the insurer as would, if the insurer were not estopped, operate as a fraud on some party who has taken or neglected to take some action to his own prejudice in reliance thereon." *Wasilko*, 232 A.2d at 63; *United Nat'l Ins. Co. v. Indian Harbor Ins. Co.*, Civil Action No. 14-6425, 2015 WL 437630, at *9 (E.D. Pa. Feb. 2, 2015) ("[T]he doctrine of estoppel cannot enlarge insurance coverage unless the insurer undertook conduct which induced the insured to take or neglect to take some action to its prejudice."). "Accordingly, an insurer is not estopped to deny liability on a policy where the plaintiff was not misled by the defendant's

conduct." *Id.* Therefore, in order to survive summary judgment, Plaintiffs must identify (1) conduct on the part of Defendant that (2) induced Plaintiffs (3) to reasonably rely to their detriment.

With regard to the first two elements, there is a dispute as to whether Mr. Fisher's actions surrounding the coverage of the August 2015 Loss can be imputed to Defendant and whether that conduct induced Plaintiffs. (ECF No. 32 at 23-24; ECF No. 35 at 5-6.) However, the Court need not discuss the first two elements of equitable estoppel, as the third element is outcome determinative: Plaintiffs have failed to show a genuine dispute of material fact with regard to reasonable, detrimental reliance. Plaintiffs "merely argue[] that [they] reasonably expected the [Subject Loss] to be covered based on the coverage of the earlier claim," which is not enough to show detrimental reliance. *Keystone Filler & Mfg. Co., Inc. v. Am. Mining Ins. Co.*, 179 F. Supp. 2d 432, 443 (M.D. Pa. 2002) ("Keystone points to no evidence that it justifiably or detrimentally relied on AMI's payment of the 1997 claim. It merely argues that it reasonably expected the Rutland claim to be covered based on the coverage of the earlier claim. While this may or may not be true, without justifiable and detrimental reliance on the settlement of the prior claim, Keystone may not successfully assert equitable estoppel."); *see Westfield Ins. Co. v. Rustic Exteriors, Inc.*, CIVIL ACTION NO. 11-6011, 2013 WL 12146532, at *9 (E.D. Pa. Mar. 21, 2013) (rejecting an estoppel argument based on the payment of a prior claim under an insurance policy); *Wasilko*, 232 A.2d at 63-64 (finding no detrimental reliance based on the insurer's payment of a previous claim and explaining that "since the law favors the compromise and settlement of claims to avoid litigation, it would be unwise to inhibit insurance companies from promptly adjusting claims by increasing the peril of doing so").

Although Plaintiffs' Memoranda argue that Defendant's silence regarding the residence premises condition prevented Plaintiffs from arranging for other insurance coverage without such a condition (ECF No. 32 at 24), Plaintiffs have not cited to anything in the record to support this claim. *See Nationwide Prop. & Cas. Ins. Co. v. Shearer*, No. 2:14-cv-735, 2015 WL 1186008, at *11 (W.D. Pa. Mar. 13, 2015) (explaining that "'[u]nsupported assertions, conclusory allegations, or mere suspicions' are not enough" to show actual prejudice); *Merchants Mut. Ins. Co. v. Artis*, 907 F. Supp. 886, 892 (E.D. Pa. 1995) ("[P]rejudice may not be presumed, it must be conclusively established in order to effect an estoppel."). Therefore, without detrimental reliance on Defendant's actions regarding the payment for the August 2015 Loss, Plaintiffs may not assert equitable estoppel.[18] *Keystone Filler*, 179 F. Supp. 2d at 443. Plaintiffs have accordingly failed to raise a genuine dispute of material fact with regard to the application of the estoppel doctrine.

## 5. The Court will grant Defendant's Motion for Summary Judgment on Plaintiffs' breach of contract claim.

Based on the foregoing discussion, the Policy conditions coverage on residency at the Subject Property, and Defendant has not waived this condition and is not estopped from asserting the condition as a defense. Furthermore, Plaintiffs did not comply with the condition—they did not reside at the Subject Property at the time of the Subject Loss. Therefore, the Subject Loss is not covered by the Policy and Defendant is entitled to summary judgment on Plaintiffs' breach of contract claim. The Court will thus grant Defendant's Motion for Summary Judgment (ECF

---

[18] Furthermore, any reliance on the payment for the August 2015 Loss under the Policy would not have been reasonable, given that the Partial Declination of Coverage letter sent to Plaintiffs in relation to the August 2015 Loss explicitly stated that "[i]t is possible that there are additional reasons why coverage would not apply." (ECF No. 31-2 at 28.)

No. 24) on Plaintiffs' breach of contract claim and deny Plaintiffs' Cross Motion for Partial Summary Judgment (ECF No. 33) on the question of whether Plaintiffs resided at the Subject Property.

## B. Bad Faith Claim

Plaintiffs' second claim against Defendant is for statutory bad faith. (ECF No. 1-3 at 5.) Plaintiffs argue that by advising Plaintiffs to seek water remediation services for the Subject Loss and then denying coverage for the Subject Loss, as well as by failing to inform Plaintiffs after the August 2015 Loss that they were not complying with the residence premises condition, Defendant acted in bad faith. (ECF No. 32 at 25-26.)

Under Pennsylvania's bad faith statute, "[i]n an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured," the court may take various actions, including awarding interest, punitive damages, and costs and attorney's fees to the insured. 42 Pa. Cons. Stat. § 8371. The Supreme Court of Pennsylvania recently adopted a two-part test for determining when a plaintiff can recover in a bad faith action. *See Rancosky v. Wash. Nat'l Ins. Co.*, 170 A.3d 364, 365 (Pa. 2017). The court held that the plaintiff must "present clear and convincing evidence (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis." *Id.*

Based on this Court's discussion of Plaintiffs' breach of contract claim, Defendant clearly had a reasonable basis for denying coverage for the Subject Loss: the Policy required Plaintiffs to reside at the Subject Property, and Defendant concluded, after an investigation, that Plaintiffs did not reside there, a conclusion with which this Court agrees. *See supra* Section VI.A. Because

Defendant did have a reasonable basis for denying coverage, Defendant could not have known or recklessly disregarded a lack of reasonable basis. Accordingly, Plaintiffs' bad faith claim fails. *See Campbell*, 2018 WL 3468214, at \*2 ("In light of the dismissal of the Breach of Contract claim, the Bad Faith claim cannot survive."). The Court will thus grant Defendant's Motion for Summary Judgment (ECF No. 24) with regard to Plaintiffs' bad faith claim.

## VII. Conclusion

For the foregoing reasons, the Court concludes that there is no genuine dispute of material fact that the Policy conditions coverage on Plaintiffs residing at the Subject Property and that Plaintiffs failed to comply with this condition. Therefore, Defendant is entitled to judgment as a matter of law on Plaintiffs' breach of contract and bad faith claims. The Court thus **GRANTS** Defendant's Motion for Summary Judgment (ECF No. 24) and **DENIES** Plaintiffs' Cross Motion for Partial Summary Judgment (ECF No. 33).

A corresponding order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES and SUSAN GEROW, | ) | Case No. 3:17-cv-203 |
| | ) | |
| Plaintiffs, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| STATE AUTO PROPERTY & CASUALTY | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

NOW, this ‾11th‾ day of October, 2018, upon consideration of Defendant's Motion for

Summary Judgment (ECF No. 24) and Plaintiffs' Cross Motion for Partial Summary Judgment

(ECF No. 33), it is **HEREBY ORDERED** that Defendant's Motion for Summary Judgment (ECF

No. 24) is **GRANTED** and Plaintiffs' Cross Motion for Partial Summary Judgment (ECF No. 33)

is **DENIED**.

Accordingly, **IT IS ORDERED** that all claims brought in Plaintiffs' Complaint (ECF No.

1-3) against Defendant are **DISMISSED WITH PREJUDICE.**

**BY THE COURT:**

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**